UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUNE B. CULBERTSON,

                Plaintiff,

  v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

Case No. 3:17-cv-05450-TLF

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS

June B. Culbertson has brought this matter for judicial review of defendant's denial of her application for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court reverses the Commissioner's decision denying benefits and remands for further administrative proceedings.

I.  BACKGROUND

Ms. Culbertson filed an application for a period of disability and disability insurance benefits on December 11, 2015. Dkt. 8, Administrative Record (AR) 15. She alleged in her application that she became disabled beginning December 31, 2009.[1] *Id.* She later amended her

---

[1] SSDI benefits are based on earnings, and the benefits are limited to the period of insurance. 42 U.S.C. §§ 401(b), 423(c)(1), (d)(1)(A). The legal criteria for deciding whether a disability exists is the same under both SSDI and Supplemental Security Income (SSI). *Diedrich v. Berryhill*, 874 F.3d 634, 637 (9th Cir. 2017).

ORDER - 1

alleged onset date to October 15, 2013. *Id.* Her application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ) on April 29, 2016. AR 40-74. Ms. Culbertson and a vocational expert appeared and testified.

The ALJ found that Ms. Culbertson could perform jobs that exist in significant numbers in the national economy, and therefore that she was not disabled. AR 15-30 (ALJ decision dated November 2, 2016). The Appeals Council denied Ms. Culbertson's request for review on April 27, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. Ms. Culbertson appealed that decision in a complaint filed with this Court on June 14, 2017. Dkt. 4; 20 C.F.R. § 404.981.

Ms. Culbertson seeks reversal of the ALJ's decision and remand for further administrative proceedings including a new hearing, arguing that the ALJ misapplied the law and lacked substantial evidence for her decision. Ms. Culbertson contends that the ALJ erred at steps two and five of the five-step criteria. The alleged errors concern the ALJ's reasons for finding migraine headaches not to be a severe impairment and for discounting Ms. Culbertson's statements about the severity of various symptoms. For the reasons set forth below, the undersigned concludes that the ALJ did not properly apply the law at step five of the disability analysis and substantial evidence does not support her decision concerning Ms. Culbertson's testimony about severity of symptoms. Consequently, the undersigned reverses the decision to deny benefits and remands for further proceedings.

## II. STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If the ALJ finds the claimant disabled or

not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id*.

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have RFC, and if so, does this RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

At issue here is the ALJ's step two determination about which of Ms. Culbertson's impairments qualify as "severe," the ALJ's consideration of Ms. Culbertson's statements in assessing her residual functional capacity (RFC), and the ALJ's step five finding that Ms. Culbertson can perform jobs existing in significant numbers in the national economy.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,*

ORDER - 3

495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

### III. THE ALJ'S STEP TWO DETERMINATION

At step two of the sequential evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. In this case, the ALJ determined that Ms. Culbertson had four severe impairments: Crohn's disease, degenerative disc disease of the cervical spine, degenerative joint disease and osteoarthritis of the ankles, and degenerative joint disease and osteoarthritis of the knees. AR 17. Ms. Culbertson contends that the ALJ erred in failing to find her migraine headaches to also be a severe impairment at step two.

An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85-28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

The step two inquiry is a *de minimis* screening device used to dispose of groundless

ORDER - 4

claims. *Smolen*, 80 F.3d at 1290. The Ninth Circuit recently emphasized that this inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (rejecting claim that ALJ erred after second hearing, where ALJ found new severe impairments but did not change RFC). The court noted that an ALJ assessing a claimant's RFC before steps four and five "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Thus, the RFC "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two. *Buck*, 869 F.3d at 1049.

The Ninth Circuit concluded, in the case before it, that because the ALJ decided step two in the claimant's favor and was required to consider all impairments in the RFC, whether "severe" or not, "[a]ny alleged error is therefore harmless and cannot be the basis for a remand." *Buck*, 869 F.3d at 1049 (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

The same is true here. Because the ALJ decided step two in Ms. Culbertson's favor, the ALJ was required to consider evidence of any and all impairments, severe or not, in assessing Ms. Culbertson's RFC. *See Buck*, 869 F.3d at 1049. The ALJ's discussion indicates that she did consider Ms. Culbertson's complaints of headaches and their effects in assessing Ms. Culbertson's RFC. AR 24-25.

Ms. Culbertson further challenges *how* the ALJ considered her migraines in the RFC analysis. That argument is addressed below.

ORDER - 5

## IV. THE ALJ'S CONSIDERATION OF MS. CULBERTSON'S TESTIMONY

The ALJ found Ms. Culbertson's testimony on the severity of her symptoms "not entirely consistent with the medical evidence and other evidence in the record." AR 22. Based on this determination and her evaluation of the medical opinion evidence—which Ms. Culbertson does not challenge—the ALJ found that Ms. Culbertson has the residual functional capacity

> **to perform sedentary work as defined in 20 CFR 404.1567(a). She can occasionally reach overhead. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally climb ramps or stairs but cannot climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to extreme cold, extreme heat, vibration, fumes, odor, dust, gases, and hazards. The claimant should have ready access to a bathroom.**

AR 25 (emphasis added).

Ms. Culbertson contends that the ALJ did not provide adequate reasons to reject her testimony on the severity of several conditions. The Court agrees.

At step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e). The ALJ can do this through testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000). An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "'must be accurate, detailed, and supported by the medical record.'" *Id.* (quoting *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring)).

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess[ ]" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See Allen*, 749 F.2d at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as substantial evidence supports that determination. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective description of symptoms, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d. 821, 834 (9th Cir. 1995) (citation omitted). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834.

A. <u>Neck Pain</u>

The record indicates that Ms. Culbertson has experienced pain from her cervical spine condition and related headaches, as well as migraines. AR 1188-91 (treating physician discussing two types of headaches Ms. Culbertson experiences). A treating neurologist assessed that Ms. Culbertson had "a history of migraine headaches and significant trauma due to an improvised explosive device (IED) explosion in Iraq with subsequent C5 through C7 vertebral fusion." AR 1190. He also noted that "[s]he suffers from chronic migraines, in addition to likely cervicogenic headache secondary to trauma." *Id.*

These injuries have required significant treatment. Ms. Culbertson underwent a fusion of her cervical vertebrae in 2010, in which plates were inserted in her neck. *See* AR 1049, 1189.

ORDER - 7

Ms. Culbertson has also received several medial branch blocks (most recently in April 2016, AR 1531-32), which are injections intended to relieve her neck pain and related headaches. AR 775, 1012, 1023.These injections worked for some months before the pain returned, Ms. Culbertson reported, with "a vengeance." AR 1023, 1049, 1188.

Ms. Culbertson has reported severe symptoms stemming from her neck injury. In a 2011 function report, she wrote that a plate in her neck caused "constant migraines." AR 226. She stated that she sleeps only 3 hours per night, or more if it is a "migraine and pain free day." AR 227. And she wrote that the plate and bone spurs in her neck together with migraines leave her "bed ridden a lot of the time." AR 233.

She continued to report significant limitations due to neck pain in 2015: She wrote in another function report that her neck fusion limited her range of motion and gave her headaches "with prolonged bending" and that the plates in her neck made her unable to lift more than 50 pounds. AR 258. She reported sleeping only two to four hours per night. AR 260. She wrote that she could not prepare foods that take a long time because the position of her neck would cause a headache. *Id.* She also wrote that she could no longer do her favorite hobbies (sports, horse riding, motorcycles, woodwork, hiking) along with everyday activities, because of the combination of plates in her neck, headaches, and needing a bathroom due to Crohn's disease. AR 262. And she checked boxes indicating she is limited in almost every physical function, including sitting, talking, and reaching, along with most cognitive functions. AR 263.

Ms. Culbertson reported being restricted in some of her activities, though not others: She testified at the ALJ hearing that she was able to take care of her granddaughter. AR 56. She said she does chores, though her son does the heavier chores; she cooks, drives, cares for herself, and shops. AR 57-59. While her granddaughter is at school, Ms. Culbertson keeps things in order at

home and does volunteer work for Relay for Life for a couple of hours per day. AR 58. She attends hour-long Relay for Life meetings once per month. AR 58-59. She paints often, for up to an hour at a time. AR 60. But, she testified, she does not use the computer or read books because of her neck pain. AR 60-61. In her most recent function report, Ms. Culbertson wrote that in a typical day she takes her granddaughter to school, comes home and tries to craft, do yardwork, and clean house, cooks, sleeps, and sits on the couch to wait to pick up her granddaughter. AR 259.

The ALJ discounted Ms. Culbertson's testimony that her neck pain becomes so severe that she must stop performing functions like bending and activities like preparing food, playing sports, and hiking, in addition to limitations from headaches associated with the neck pain. AR 24, 231, 260, 262. The ALJ noted that Ms. Culbertson socializes on Facebook, does online classwork, reads, drives, and at times has cared for her grandchild for five hours per day. AR 227, 259-60, 444, 453, 880, 890. The ALJ credited and accounted for some of Ms. Culbertson's testimony about her neck. For instance, the ALJ limited Ms. Culbertson to sedentary work, which accords with her testimony that, per her doctor, she could lift only 10 pounds. *See* AR 22, 66.

Ms. Culbertson asserts that the ALJ erred in finding her activities inconsistent with her reported symptoms, and in particular in relying on her role in caring for her grandchild. Ms. Culbertson points out that while she testified that she read, used Facebook, and did classwork, she did not say she did so "for sustained periods that would translate to work activity." Dkt. 10, p. 8.

Claimants do not need to show they are "utterly incapacitated in order to be disabled." *Revels v. Berryhill,* 874 F.3d 648, 667 (9th Cir. 2017). Activities such as childcare, washing

ORDER - 9

dishes, house cleaning, shopping, running errands, feeding pets, and other common domestic responsibilities, do not detract from a claimant's credibility regarding her overall disability. *Revels*, 874 F.3d at 667-68. An ALJ may rely on a claimant's daily activities to support an adverse credibility finding when those activities contradict the claimant's subjective complaints or are transferable to a work setting and the claimant spends a "substantial part of her day" on them. *Smolen*, 80 F.3d at 1284 & n.7; *see Orn*, 495 F.3d at 639; *Trevizo*, 871 F.3d at 682.

"[D]isability claimants should not be penalized for attempting to lead normal lives." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "[M]any home activities may not be easily transferable to a work environment," "where it might be impossible to periodically rest or take medication.'" *Trevizo*, 871 F.3d at 682 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *Smolen*, 80 F.3d at 1284.

In *Trevizo v. Berryhill*, an ALJ found based on the claimant's childcare responsibilities that the claimant's subjective symptom testimony was less than credible. 871 F.3d 664, 682 (9th Cir. 2017). The Ninth Circuit rejected the ALJ's finding, reasoning that

> there is almost no information in the record about Trevizo's childcare activities; the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations. Moreover, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603. That appears to be the case here, where Trevizo's childcare responsibilities permit her to rest, take naps, and shower repeatedly throughout the day, all of which would be impossible at a traditional full-time job.

*Trevizo*, 871 F.3d at 682.

The same reasoning applies here. First, the record does not fully support the ALJ's characterization of Ms. Culbertson's activities. Although the ALJ cited Ms. Culbertson's testimony that she socializes on Facebook and statements in her 2011 function report that she performed online classwork and read (AR 24, 61, 230), at the hearing Ms. Culbertson stated that

ORDER - 10

she does not use a computer or read because of her neck pain. AR 60-61. She demonstrated to the ALJ how she checks Facebook, by holding her phone up in front of her face. AR 61.

In addition, the ALJ noted that Ms. Culbertson "watched her granddaughter for five hours daily early in the record" and eventually became her primary caregiver. AR 24. Yet (as the ALJ seemed to acknowledge) the "five hours" statement is dated 2011; Ms. Culbertson's more recent October 19, 2015 function report (and her testimony at the hearing in 2016) indicated only that she was responsible for feeding her granddaughter, dropping her at school, and picking her up. AR 56-58, 259.

The ALJ also found that "[o]ther records suggest [Ms. Culbertson] care[d] for several children including a 4-year-old." AR 24. This finding has no basis in fact. The ALJ's decision cited only one document, and that document is not accurate: it states Ms. Culbertson has "2 kids, including a 4yo," but Ms. Culbertson actually has only two adult sons. AR 852, 1542. Ms. Culbertson testified at the hearing that she and her 26-year-old son shared childcare tasks for her five-year-old granddaughter, such as getting her to school, preparing food, and doing other chores. AR 56-58.

Second, even if this Court assumes, for purposes of argument, that the record supports the ALJ's characterization of Ms. Culbertson's activities, nothing in the record shows those activities are "'easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.'" *Trevizo*, 871 F.3d at 682 (quoting *Fair*, 885 F.2d at 603). The ALJ found that "[t]aking care of a young child is very exertional work," citing the definition of a child care worker in the Dictionary of Occupational Titles. AR 24. The ALJ wrote that "being the full-time caretaker of a preschool aged child is a physically and mentally demanding endeavor." AR 24. She found that Ms. Culbertson's

ORDER - 11

caretaker role thus "weighs strongly against" a disability finding. AR 24. The Ninth Circuit expressly rejected this type of reasoning in *Trevizo*: "the mere fact that [the claimant] cares for small children does not constitute an adequately specific conflict with her reported limitations." 871 F.3d at 682.

Here, as in *Trevizo*, the ALJ's decision generalized from evidence that the claimant performs some childcare activities to find that the claimant could perform all the functions childcare might require. Then, the decision of the ALJ extended that unsupported reasoning, by analogizing Ms. Culbertson's role to that of a full-time child care worker. AR 24. As in *Trevizo*, the record contains few details about Ms. Culbertson's specific childcare activities; when the facts are interpreted in a reasonable way, nothing in the record negates Ms. Culbertson's claimed limitations from neck pain. The ALJ thus failed to give clear and convincing reasons to reject Ms. Culbertson's testimony about her neck pain and related headaches. These errors require reversal. *See Lester*, 81 F.3d at 834.

B.  Headaches and Sleep Loss

As noted above, Ms. Culbertson's medical records suggest that she suffered two types of headaches: cervicogenic headaches related to her neck pain, and "normal migraines." AR 1190-91. But the ALJ's decision did not appear to distinguish between the two types of headache, and she discounted Ms. Culbertson's statements about limitations from headaches in general. AR 24-25 ("The claimant's neck pain appears to be related to migraines and difficulty sleeping."). Ms. Culbertson challenges the ALJ's consideration of her migraine headaches in addition to the ALJ's consideration of her neck pain. Because the ALJ did not distinguish between headaches related to Ms. Culbertson's neck injury and unrelated migraines, on remand the ALJ should

ORDER - 12

reconsider the evidence relating to both types of headache in addition to Ms. Culbertson's neck condition.

Ms. Culbertson also contends the ALJ failed to account for evidence of limitations due to lack of sleep. Because the ALJ acknowledged that Ms. Culbertson's lack of sleep also appears to be related to her neck pain and headaches, the Commissioner on remand should also reevaluate limitations from sleep loss. *See* AR 24.

C.   Crohn's Disease

Ms. Culbertson has been diagnosed with Crohn's disease. AR 25, 366-372, 1426. She testified, "my Crohn's disease gives me joint pain and I get really depressed where I just—because I can't function like I used to." AR 51. She testified that some days she does not leave bed because her body hurts. *Id.* She takes 1-2 Percocet tablets per day for pain. AR 53.

She testified that joint pain from Crohn's disease also causes fatigue and weakness in her arms. AR 51, 53-54. She gets only three hours of sleep per night, and requires one-hour naps during the day due to fatigue. AR 55. And she testified that she wears adult diapers on a consistent basis every day and needs frequent access to a bathroom because of incontinence from Crohn's. AR 50. Within the 6-month period leading up to the hearing, the number of times that Ms. Culbertson required an urgent "run" to the restroom during the day or night was five or six *every day*, and there were times when she had to pull the car over immediately to access a restaurant where she could use the bathroom. AR 51.

In her 2011 function report, Ms. Culbertson stated that she had to stop doing outdoor activities because she needed to be near a bathroom. AR 230. Medical records dated January 2011 through October 2011 indicate that she was initially diagnosed with Crohn's disease in 2002, she was prescribed certain medications, and she had a partial resection of the ileum. AR

ORDER - 13

370, 408-410. She did not take medications for Crohn's again until 2011; then she was prescribed, first, Methotrexate and Remicade, and then Humira after Remicade caused flushing and throat swelling. AR 366-372, 408-415, 446, 455, 459, 467, 469, 485, 490-493. At the time of the hearing, Ms. Culbertson testified that she was taking Humira, as well as nortriptyline, Percocet, Zyrtec, topiramate, losartan, Phenergan, she was using knee braces and receiving regular injections for knee pain. AR 63-67. She stated that she takes Phenergan about five times per month, to counteract nausea, fistulas, and spasms in her stomach that are recurring symptoms of Crohn's disease, and "it knocks [her] out:" she cannot drive or even move or function. AR 65-67. Ms. Culbertson noted that her medication for Crohn's disease, Humira, was "not really doing too much because now I have fistulas in my stomach that we're trying to figure out what we could do about that and – because I'm allergic to every other medication we've tried." AR 50.

Ms. Culbertson points out that, although she alleged a number of impairments from Crohn's disease, the ALJ addressed only abdominal pain and bowel movements. Dkt. 10, pp. 10-11; *see* AR 25. The Commissioner responds that the ALJ's findings about Ms. Culbertson's activities justify the ALJ's decision to reject Ms. Culbertson's testimony about other limiting effects of Crohn's disease, such as body and joint pain and fatigue. *See* Dkt. 11, p. 4. The ALJ's failure to consider associated effects of Crohn's disease other than gastrointestinal problems, including fatigue and joint pain—as well as any side-effects of medications for Crohn's disease—is harmful error. The ALJ should consider those effects on remand, together with neck pain and related headaches. To reject a claimant's subjective description of symptoms, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d. 821, 834 (9th Cir. 1995) (citation omitted). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81

ORDER - 14

F.3d at 834. Here, there is no evidence of malingering, and the ALJ failed to assess the totality of evidence concerning Ms. Culbertson's symptoms and limitations. *See Lester*, 81 F.3d at 834; *see also Dix v. Sullivan*, 900 F.2d 135, 138 (8th Cir. 1990) (finding the plaintiff was disabled, based on physical manifestations associated with the complainant's Crohn's disease, including severe pain, nausea, fatigue, diarrhea, and the resulting inability to function in a workplace).

Therefore, reversal is warranted.

D. <u>Weakness and Grip</u>

Ms. Culbertson challenges the ALJ's finding that medical evidence contradicts Ms. Culbertson's testimony that her arms are weak and she loses her grip at times. AR 23. The ALJ acknowledged Ms. Culbertson's history of neck pain and cervical spine surgery. *See* AR 316-17, 669, 1366, 1416. She also noted that Ms. Culbertson has complained of left arm numbness. *See* AR 1378. But the ALJ also noted that although one exam showed decreased sensation in fingers on the left hand, AR 417, a later electrodiagnostic study was normal, AR 702-03, and in numerous exams Ms. Culbertson showed full strength in her upper extremities and no sensory deficits. *See, e.g.*, AR 428, 641, 775, 812, 831, 1144, 1190, 1236, 1242, 1335, 1370. *But see* AR 1051 ("slightly diminished sensation in L arm). The ALJ found that Ms. Culbertson's report of bilateral hand swelling with difficulty closing her fists" was "not a typical report and . . . not observed by medical personnel," and was contradicted by those objective tests. AR 24.

Ms. Culbertson contends these are not clear and convincing reasons to reject her testimony. She asserts that the ALJ impermissibly "premise[d] a credibility finding on a lack of medical support for the severity of a claimant's pain." Dkt. 10, p. 9.

Ms. Culbertson's argument conflates weakness and numbness with pain. Social Security law recognizes special rules for addressing a claimant's statements about pain because pain

ORDER - 15

cannot be objectively measured or tested for. *See Smolen*, 80 F.3d at 1281. But as the record here demonstrates, medical professionals do have methods of testing and measuring strength and sensation. Ms. Culbertson's test results contradict her testimony, so the ALJ did not err in relying on them to discount that testimony. *See Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

E.  Side Effects of Medication

Finally, Ms. Culbertson challenges the ALJ's consideration of her brief testimony about the side effects of her pain medication. Ms. Culbertson testified that she takes one to two doses of Percocet per day for joint pain from Crohn's and knee pain. She stated that it makes her "loopy/air-heady," then she falls asleep. AR 53. The ALJ discounted this testimony, finding that the medical record showed Ms. Culbertson "was typically observed to have intact memory, concentration, and attention despite medications." The ALJ also found that Ms. Culbertson's activities—including driving and being "the primary care provider for her young granddaughter"—are consistent with the RFC despite Ms. Culbertson's use of medications.

Ms. Culbertson contends that the ALJ's reliance on objective testing showing intact memory and concentration was misplaced. She points out the ALJ did "not indicate what exams were performed . . . and it is doubtful that cognitive assessment was the focus of any exam the ALJ was referring to." Dkt. 10, pp. 7-8. An ALJ can rely on objective evidence that contradicts alleged limitations to discount that testimony. *See Regennitter*, 166 F.3d at 1297. The ALJ did so here, yet the longitudinal evidence in the record shows that Ms. Culbertson's pain management has been a difficult problem and many different medications are being taken by her to try and address multiple conditions and symptoms. Moreover, symptoms and the types of medications to address various conditions may change as symptoms wax and wane. *Taylor v. Comm'r of Soc.*

ORDER - 16

*Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011); *see also Dix v. Sullivan,* 900 F.3d 135, 138 (8th Cir. 1990) (describing the variable physical manifestations associated with the complainant's Crohn's disease, including severe pain, nausea, fatigue, diarrhea, and the resulting inability to function in a workplace).

Dr. Shirley Paski, M.D. provided a letter in 2016 describing Ms. Culbertson's Crohn's disease as having been long-term (since 2002); Dr. Paski indicated that the plaintiff's Crohn's disease was addressed by prescriptions for many different types of medications, and that Ms. Culbertson suffered with a variety of severe negative medication side-effects; Dr. Paski noted that "in addition to her gastrointestinal symptoms, she has also experienced . . . chronic arthralgias and myalgias" and "intermittent inflammatory ocular symptoms with uveitis." AR 1553. As of November 2016, medical records from the Veteran's Administration indicate that Ms. Culbertson "continues to have frequent bowel movements, and will end up sitting on the toilet up to 30 minutes to complete evacuation. . . . She also continues to have arthralgia which have been considered an extraintestinal manifestation of Crohns. Migraine headaches were also exacerbated after endoscopic procedures." AR 1555. Ms. Culbertson testified about the variable nature of her symptoms and the different medications she was taking, and the medical records reflect many changes in her conditions and medications, individually and collectively, over time. AR 49-54, AR 63-67, 366-372, 408-15, 446, 455, 459, 467, 469, 485, 490-93, 1553, 1555-61. In December 2016, Dr. Paski stated that Ms. Culbertson "was re-started on methotrexate and infliximab and experienced a severe infusion reaction. She was transitioned to adalimumab shortly thereafter and remains on adalimumab to this day, but her dosing has required significant increase to every 5 days (instead of the usual every 14 days) for diarrhea management. . . . [w]e are currently re-assessing her medical options – of which few options are available." AR 1553.

ORDER - 17

In determining the plaintiff's RFC, an ALJ is required to consider all relevant evidence in the record, including (but not limited to) medical records, evidence from lay witnesses, and "'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96–8p, 1996 WL 374184, at *5). The ALJ is not allowed to disregard properly supported limitations when considering the complainant's RFC. *Robbins*, 466 F.3d at 886. Here, the ALJ failed to offer a clear and convincing reason to discount Ms. Culbertson's testimony about the side effects of pain medications. On remand, the ALJ is directed to consider the entire record and take additional evidence on the issue of medication side-effects, as well as potential complications of having so many different types of medications -- so that the interactive effects are explored more completely.

## V. REMAND FOR FURTHER PROCEEDINGS

The Court may in its discretion remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292; *see Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon v. Berryhill*, 874 F.3d 1130, 1133 (9th Cir. 2017). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

In general, the Court should remand for an award of benefits where:

> "1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

ORDER - 18

*Trevizo*, 871 F.3d at 682-83 & n.11 (quoting *Garrison*, 759 F.3d at 1020).

In this case, the record is not fully developed. And, the ALJ failed to properly interpret and apply the law concerning certain legal aspects of this case. On remand, the ALJ should review the evidence of neck pain separately from migraines, and consider the symptoms and limitations related to each condition. In addition, the ALJ must evaluate how migraines, and the symptoms and limitations associated with the migraines, are related to Ms. Culbertson's neck condition, separately from other potential causes and symptoms of migraines. And, the ALJ must consider evidence relating to side-effects of medications that Ms. Culbertson takes for migraines and neck pain and limitations related to those side-effects.

In addition, the ALJ must consider all the evidence bearing on the credibility of Ms. Culbertson's testimony concerning the severity of her symptoms. And, the ALJ must avoid discounting Ms. Culbertson's testimony because Ms. Culbertson is getting out of bed and doing common chores and recreational activities that are consistent with the symptoms and limitations associated with her conditions—such as trying to take care of a grandchild. There is no evidence of malingering in this case, and Ms. Culbertson's symptoms are consistent with the objective physical evidence that is contained in the longitudinal medical records in this matter.

Moreover, the ALJ on remand is required to fully consider all the symptoms that Ms. Culbertson experiences from Crohn's disease, take additional evidence if necessary regarding symptoms, limitations that she has experienced in her ability to work because of symptoms and also any side-effects of medications for Crohn's disease. The ALJ must evaluate all symptoms and any limitations that result from those symptoms, as well as any limitations that result from side-effects from interactions between various medications that she takes to manage her conditions.

Only by considering the entire record, without discounting Ms. Culbertson's testimony about severity of symptoms, and how those symptoms affect her ability to work, and by including any new evidence regarding the issues described above, will the ALJ be able to assess the plaintiff's RFC in an accurate and legally fair manner. A proper hypothetical to the vocational expert may then be based on all limitations for which the longitudinal record provides substantial evidence. Each of Ms. Culbertson's limitations must be included in that hypothetical in order for the step five determination to be supported by substantial evidence. *Robbins*, 466 F.3d at 886.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined Ms. Culbertson to be not disabled. The Commissioner's decision to deny benefits is therefore REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 3rd day of January, 2018.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER - 20